METLAKATLA INDIAN COMMUNITY, ANNETTE
ISLAND RESERVE, *v.* EGAN, GOVERNOR
OF ALASKA, ET AL.

No. 326.   Argued May 18, 1960.—Decided June 20, 1960.*

---

*Together with No. 327, *Organized Village of Kake et al.* v. *Egan, Governor of Alaska,* also on appeal from the same Court.

*Richard Schifter* argued the cause for appellant in No. 326. With him on the brief were *Theodore H. Little* and *Daniel M. Singer.*

*John W. Cragun* argued the cause and filed a brief for appellants in No. 327.

*John L. Rader* argued the cause for appellees. With him on the brief were *Ralph E. Moody,* Attorney General of Alaska, *Douglas L. Gregg,* Assistant Attorney General, and *Charles S. Rhyne.*

*John D. Calhoun* argued the cause for the United States, as *amicus curiae,* urging reversal. On the brief were *Solicitor General Rankin, Assistant Attorney General Morton* and *Roger P. Marquis.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

These consolidated cases were commenced on June 22 and 24, 1959, in the interim District Court for Alaska, by complaints seeking permanent injunctions against threatened enforcement by the new State of Alaska, its Governor, and other agents, of an Alaska statute (Alaska Laws 1959, c. 17, as amended, Alaska Laws 1959, c. 95) making it a criminal offense to fish with traps. The statute was assailed on the ground that it was in conflict with applicable federal law. On July 2, 1959, orders were entered denying the injunctions, dismissing the complaints with prejudice, and denying an injunction pending appeal to this Court. 18 Alaska ——, 174 F. Supp. 500. On July 11, 1959, MR. JUSTICE BRENNAN, acting in his capacity as a circuit justice, granted appellants' application for an injunction pending final disposition of their future appeals to this Court. His opinion noted the existence of substantial questions, both as to our jurisdiction and the merits. 80 S. Ct. 33. The notices of appeal were filed

on August 6, 1959; on December 7, 1959, we postponed further consideration of the question of jurisdiction to the hearing of the cases on the merits. 361 U. S. 911.

If the orders rendered on July 2, 1959, were those of the "highest court of a State in which a decision could be had," the appeals are within our jurisdiction under 28 U. S. C. § 1257 (2), since the court below sustained a statute of the State of Alaska against a claim of unconstitutionality under the United States Constitution. The jurisdictional problem arises out of the enactments governing Alaska's accession to statehood, specifically, in relation to the Constitution of the new State and to the state and federal laws governing the termination of the former territorial courts and their displacement by a new state judicial system and a Federal District Court for the District of Alaska. The State Constitution, which took effect "immediately upon the admission of Alaska into the Union as a state" (Art. XV, § 25) on January 3, 1959, provided for a Supreme Court, to "be the highest court of the State, with final appellate jurisdiction," a superior court, and such other courts as the legislature may provide. Art. IV, §§ 1, 2. Article XV, § 17, provides that in the transitional period until the new courts are organized, "the judicial system shall remain as constituted on the date of admission . . ." and that "[w]hen the state courts are organized, new actions shall be commenced and filed therein, and all causes, other than those under the jurisdiction of the United States, pending in the courts existing on the date of admission, shall be transferred to the proper state court as though commenced, filed, or lodged in those courts in the first instance, except as otherwise provided by law."

The Alaska Statehood Act, 72 Stat. 339, which also became fully effective on January 3, 1959, in §§ 13–17, makes similar provision for the eventual disposition of business pending in the territorial district court upon the

organization of the new District Court for the District of Alaska. However, it too provides, in § 18, that "the United States District Court for the Territory of Alaska shall continue to function as heretofore" for three years, or until the President proclaims that the new District Court "is prepared to assume the functions imposed upon it." In June, 1959, when these actions were commenced, and on July 2, 1959, when decision below was rendered, neither new federal nor state courts were in operation.

The first question presented is whether the interim Alaskan District Court was the "court of a State" in deciding these cases. Sections 12 to 18 of the Statehood Act, 72 Stat. 339, make it plain that the interim court was not intended to be the newly created United States District Court for the District of Alaska, 28 U. S. C. § 81A; otherwise the nature of the court, whether state or federal, is not explicitly set forth. It is apparent, however, that the court is to a significant degree the creature of two sovereigns acting cooperatively to accomplish the joint purpose of avoiding an interregnum in judicial administration in the transitional period. The termination of the existence of the interim court is governed by federal law, Statehood Act § 18; but the termination of its general jurisdiction over state law matters, insofar as it is dependent on state consent, is governed by state law, Alaska Laws 1959, c. 50, § 31 (2), which also provides for the accelerated organization of separate Alaska courts should the interim court be terminated before they are ready. Alaska Laws 1959, c. 50, § 32 (4), amended by Alaska Laws 1959, c. 151, § 1.

To determine our jurisdiction we need not engage in abstract speculation as to the function of the interim court in cases not before us. Whether the court can serve as a federal court, and the permissible scope of its powers if it may so serve, cf. *National Mutual Ins. Co.* v. *Tidewater Transfer Co.*, 337 U. S. 582; *Benner* v. *Porter*,

9 How. 235, are perplexing questions, decision of which should not be avoidably made. It is apparent that the legislature of Alaska vested the judicial power of the State in the interim District Court for the time being, that the district judge in this case explicitly deemed himself to be exercising such power, and that, in light of the express consent of the United States, he properly did so. *Benner v. Porter, supra.* It follows that the District Court sat as a "court of a State" to decide these cases.

The question remains whether the interim court was also the "highest court" of Alaska within the meaning of 28 U. S. C. § 1257. At the time of the filing of the notice of this appeal on August 6, 1959, the latest time at which jurisdiction could properly be determined, no new Alaska state court was in actual operation, although on July 29 the Justices of the Court were designated by the Governor. The contention that the interim court was not the highest court of Alaska at that time rests upon this latter fact, and the terms of Alaska Laws 1959, c. 151, § 1, amending Alaska Laws 1959, c. 50, § 32, which amendment provides that in the event that "a court of competent jurisdiction, by final judgment, declares that the United States Court of Appeals for the Ninth Circuit lacks jurisdiction to hear appeals from the District Court of the District of Alaska, the Judicial Council shall forthwith meet and submit to the Governor the names of the persons nominated as justices of the supreme court and appeals from the District Court of the District of Alaska may be made to the State Supreme Court."

Because the Ninth Circuit had ruled against its appellate jurisdiction over the interim court on June 16, 1959, six days before this action was commenced, *Parker v. McCarrey,* 268 F. 2d 907, it is urged that this provision, preserving appeals from the District Court to the Supreme Court of the State until the creation of that court, requires the conclusion that at least after July 29, when the Jus-

tices were appointed, appellate review was sufficiently guaranteed to make the Supreme Court, and not the District Court, the highest court of Alaska in which a decision in the instant case could be rendered.

The question thus raised is not free from doubt. Viewing the cases as of August 6, when the notices of appeal were filed, it is fairly arguable that the preservation effected by Alaska Laws 1959, c. 151, § 1, of the right to appeal to the Supreme Court of Alaska constituted the interim court as a lower court of Alaska within the intent of 28 U. S. C. § 1257 to await the completion of the State's adjudicatory process as a prerequisite to adjudication here. Yet, were the promise of an appeal, however indefinitely postponed, to be taken as sufficient to bar our jurisdiction under § 1257, its equally obvious purpose to allow substantial constitutional questions to be timely brought here as of right would be frustrated. Although these cases were decided below on July 2, 1959, the date set by Alaska statute for full organization of the state courts was not until January 3, 1962, Alaska Laws 1959, c. 50, §§ 31 and 32 (4). If no other fact were present, a potential delay of two and one-half years before the organization of a court to hear the preserved appeal would in itself counsel a construction against denial of our jurisdiction. Here, however, two additional facts must be weighed: (1) the Justices of the Supreme Court were actually appointed on July 29, in pursuance of a direction to accelerate the organization of the court; and (2) the effective promulgation of the rules of the court (accomplished on October 5, 1959) and appointment of a clerk were in their hands. Alaska Laws 1959, c. 50, § 32 (3). While in light of these facts the question is exceedingly nice, we do not think that the assurance of a timely appeal to a court not yet functioning was sufficiently definite when the appeals were here filed to constitute a bar to our jurisdiction under § 1257 (2).

The interim court sustained the validity of the Alaska statute banning fishing with traps, Alaska Laws 1959, c. 17, as amended by Alaska Laws 1959, c. 95, against the claim of overriding federal law under the Supremacy Clause. The claim was based on an asserted conflict between the statute and regulations of the Secretary of the Interior, 24 Fed. Reg. 2053–71, prohibiting trap fishing in Alaskan waters generally, but excepting the appellants, thereby granting them in effect a license to fish with traps. The authority under which the Secretary purported to act is the Act of 1924, 43 Stat. 464, as amended, 48 U. S. C. §§ 221, 222.

A question not free from doubt, to put it at its lowest, thus raised under the Supremacy Clause, is however entangled with questions of construction of Alaskan state statutes as well as of the Alaska Statehood Act, *supra.* Also in issue is the effect of provisions of a compact between Alaska and the United States which, it is urged, reserved exclusive regulatory powers over Indian fishing rights to the United States, 72 Stat. 339, and which, so construed, is assertedly unconstitutional because of its failure to accord to Alaska participation in the Union on an "equal footing" with the other States. The latter contention raises related questions of federal power under the Commerce Clause, Art. 1, § 8. While we have before us questions of federal law that are the concern of this Court, their consideration implicates antecedent questions of local law turning in part on appreciation of local economic and social considerations pertinent to the scope of the so-called police power reserved to the State, upon which it would be patently desirable to have the enlightenment which the now fully formed Alaska Supreme Court presumably could furnish.

The original Act prohibiting traps was amended by Alaska Laws 1959, c. 95, § 1, so as to provide that it should not be construed inconsistently with the compact, and if

the Alaska court determines as a matter of statutory construction that the compact was designed to leave with the United States, as to Indian fishing, the power it exercises under the White Act, a constitutional question now appearing on the horizon might disappear. Moreover, since questions are raised regarding the status of these two Indian communities in relation to the authority of the Secretary of the Interior, enlightenment drawn on the spot by the Alaska Supreme Court may be material to any ultimate determination of federal questions by this Court. Finally, since the ultimate challenge to this legislation is that it must yield to superior federal authority, an authoritative pronouncement by the Supreme Court of Alaska with regard to the justifications of this legislation under the so-called police power would have important bearing on the question of the scope of the powers reserved to the State.

Accordingly, consistently with the policies embodied in § 1257, and in view of the peculiar facts of these cases, we refrain at this stage from deciding the issues presented on the merits of these appeals so as to afford the Alaska Supreme Court the opportunity to rule on questions open to it for decision. We assume that that court has jurisdiction in these cases. However, since it alone can authoritatively decide such a question, we shall hold the cases on our docket. After the Alaska Supreme Court's decision, there may be further proceedings on these appeals; and if it assumes jurisdiction, further appeals may be taken from its judgments. Cf. *Lassiter* v. *Northampton County Board of Elections,* 360 U. S. 45.

Because of the nature of the asserted claim of federal right and the irreparable nature of the injury which may flow from the enforcement of these Alaska criminal statutes prior to a final determination of the merits, we continue the stays granted by Mr. Justice Brennan on July 11, 1959, until the final disposition of the cases.

Having been advised that appeals in these cases are pending in the Alaska Supreme Court, we direct appellants to pursue those appeals for disposition not inconsistent with this opinion.

*It is so ordered.*

THE CHIEF JUSTICE, MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS dissent from remitting the parties to the Alaska Supreme Court, as they are of the view that the controlling questions are federal ones whose resolution is for this Court.